IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| CINDY SMITH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 04-2215 |
| | ) |
| MASTERBRANDS CABINETS, INC. | ) |
| | ) |
| Defendant. | ) |

**RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

NOW COMES the Plaintiff, CINDY SMITH, by her attorneys, LONDRIGAN, POTTER & RANDLE, P.C., and in response to defendant's motion for summary judgment, states as follows:

### INTRODUCTION

MasterBrand Cabinents, Inc. ("MasterBrands") files a motion for summary judgment that is based primarily on a claim that the statute of limitations has expired. However, MasterBrands' motion falls short because it fails to perceive that Cindy Smith's ("Cindy") complaint is based on a course of conduct creating a hostile environment of sexual discrimination and harassment. Where a hostile environment is concerned, all incidents of sexual discrimination and harassment are included in the calculus even though some of them may have occurred outside the relevant period. Similarly, MasterBrands' failure to consider the doctrine of hostile environment sexual discrimination prevents the award of summary judgment in its favor because it has failed

1

to consider Cindy's entire course of employment. Instead, MasterBrand only focuses on a few discreet acts, after the limitations period

Cindy requests that summary judgment be denied because MasterBrands has not met its burden of proof and because there are material facts in dispute.

## RESPONSE TO DISPUTED MATERIAL FACTS

(1) **Undisputed Material Facts**

1-4, 6, 21, 22, 24, 25, 27

(2) **Disputed Material Facts**

17. Cindy stated that co-worker Dustin Hall wrongly accused her of putting the wrong parts in tubs on "fucking purpose"; she was doing about five "fucking" tubs wrong. (Cindy Smith dep, pp. 53-55)

18-9. Cindy stated that she was upset and crying and went to her supervisor. Cindy's supervisor gave her an excused absence. (Smith dep p. 57; Winschief dep. p. 23, attached as Ex. C)

26. Ohrt's investigation did not corroborate a lack of sexual discrimination. (See Deposition of Cheryl Doss, pp. 18, 30, attached as Exhibit B) See also MasterBrand attachment no. 15, MB 0741, Ohrt notes: "Carol [Bogan] said he [supervisor John Winschief] is a shovenist [sic] against women...,; MB 0744, Ohrt notes: "I do feel sometimes he likes the men more than women...I feel like he doesn't want women to work on certain machines as if they can't handle it...;" MB 0746, Ohrt notes: "He [John

2

Winschief] most definitely shows favoritism. It seems like he favors the males..."; MB 0747, Ohrt notes: "Deb informed me she is talking with a lawyer and ... John discriminated against women.... He had previously moved other men when they complained of pain. He did not move me...."

28. Cindy and Cheryl Doss dispute the results of Ohrt's "investigation." (See Smith dep. pp. 106-108; Doss dep. pp. 37-39)

(3) **Immmaterial Facts**

5. The overall ratio of men to women in the plant has no bearing on whether Cindy herself was discriminated against.

7-16. The specific job duties of the various positions is not material. Cindy is claiming that she was not cross-trained in her existing position whereas men were. (Smith dep. pp. 66-68; Doss dep. pp. 120-122)

20. Cindy's trip to Tennessee is not pertinent to any issue.

23. Since all acts of sexual discrimination and harassment are material irrespective as to their timing (*See infra* at p. 9) it doesn't matter when Decker's employment was terminated.

29-31. A policy on discrimination is irrelevant if not followed. Cindy repeatedly went to her supervisor to complain about sexual harassment. (Smith dep. pp. 56, 65, 106; Doss dep. p. 13; Dr. Kopacsz's medical records, Exhibit A attached)

32-46.   Because of MasterBrands' pervasive discrimination against women causing Cindy to experience post-traumatic stress disorder, Cindy was unable to return to work at the time her leave was up.  (See notes of Dr. Kopacz, Exhibit A)

24. **Additional Material Facts**

1. Cindy was diagnosed with post-traumatic stress disorder as a result of a pattern of hostile environment discrimination at work.  (See notes of Dr. Kopascz, Exhibit A)

Additional material facts are provided below as necessary.

## FACTS

In her complaint, Cindy Smith alleges that MasterBrands engaged "in a course of conduct of sex discrimination, sexual harassment and retaliatory conduct for SMITH's complaints of sexual discrimination and harassment." (Compl ¶ 4)  As a result of that course of conduct, Cindy alleges that she "developed anxiety, post-traumatic stress disorder, major depression and had to go on leave of absence due to the sexual harassment and retaliation at work." (Compl. ¶5)  Cindy's complaint is buttressed by her doctor's contemporaneous medical record.

> Cindy is a 43-year-old, once widowed, currently engaged woman who works at Master Brand in Arthur.  She was seen on crisis Friday.

\* \* \*

> She presents for an evaluation of significant stress, anxiety and depression.
>
> * * *
>
> She describes crying all the way home, particularly after troubling things at work. She describes being pushed in the chest, being called all sorts of obscene names, such as a fucking bitch and lazy, fucking bitch. This is generally by other employees. She has gone to supervisors multiple times. They haven't been responsive in limiting this work.
>
> * * *
>
> I also brought up the question of why she didn't file police charges when she was pushed at work.
>
> She said that her supervisors told her that she wasn't going to be able to use company phones to file a police report and that she shouldn't worry about and that if it happened again, they would call the police themselves. Overall, she says she feels that there's a pattern of discrimination and harassment toward women.
>
> David Kopacz, M.D., Psychiatric Evaluation notes dated 4/14/03, Exhibit A

As a result of these findings, Dr Kopacz made a diagnosis of Post Traumatic Stress Disorder and recommended that she not return to work. (See letter dated 8/27/03, Exhibit A)

A co-worker of Cindy Smith noted that Cindy Smith bore the brunt of verbal abuse of being called a "fucking bitch." (Doss Dep. pp 9-10) She described an incident where a male co-worker smacked Cindy on the butt and on her leg and was laughing about it.

> A. I would come through and double check the carts when I could, and a guy by the name of Art Decker came through and he had a long, I think it was style, it was pretty long, and he smacked her with it in the butt and the back part of her leg and you could hear it, it was very noticeable, and he was laughing about it.

* * *

> Q. Do you recall whether Cindy showed you any bruising that she had as a result of that incident?
>
> A. Yes, we did go to their restroom and she said Cheryl look at this, and she pulled down her jeans and she had a big welt, this was after that, it was a big welt on the back of her leg. I just looked at her leg.
>
> Q. Was Cindy in tears at that time?
>
> A. Yes.
>
> Cheryl Doss dep., pp. 12, 13

Doss confirmed that Cindy's supervisor stated that he would not cross-train women on the new machines because they were expensive machines and that women might break a fingernail.

> Q. Were you present at a time when John Winschief made a comment about when new machinery was being brought in and he made a comment about Cindy couldn't operate the new machinery because she might lose a fingernail?
>
> A. Yeah, yeah. There was a new machine coming in. They said they were going to cross-train people on it, and Cindy had asked if she could be crossed – she wanted to be cross-trained on the machines and she's like to be – she'd like to learn how to run that new saw that come in.

And John laughed and he said we're not going to train you on that, you might break a fingernail.

* * *

Q. Did John also make the comment that he didn't think women should be trained on this new machine because that it was an expensive machine and that women might be more likely to break it than men?

A. John has made that statement several times.

Cheryl Doss dep., pp. 18-19

Cindy was not given the opportunity to be cross-trained on the new machines, but men were. (Doss pp. 19-20) Doss described other incidents where Cindy was poked in the chest, (pp. 21-2), where Cindy was shoved, (p. 43) made complaints to management regarding male employees, (pp. 28, 31) where Dustin stated, he didn't want Cindy's "fucking stool in his way", (p. 38) and where there was no way that someone could simply put the stool down on the other side of the conveyor belt. (pp. 38-9)

Cheryl Doss also described the final straw on Cindy's last day at work before Cindy reported to crisis management at a local mental health center. (Doss Dep. pp. 44-45, Exhibit A) On that day, another male employee was using Cindy's password to get on to a company computer which was strictly forbidden. (p. 44) Cindy was stressed out.

Q. Do you recall in particular what she was stressed out about?

A. I do believe Cindy has stated to me that she was stressed out about being discriminated against. She felt like

7

>women didn't have as much of a opportunity as men. She was upset because her injuries she didn't feel like were maybe being treated as well as she felt that they would. She was stressed out about the extra work load. There was a lot of it.

Cheryl Doss dep., p. 45

## ARGUMENT

I. <u>Standard of Review</u>

A summary judgment may only be granted if there is any material dispute that requires a trial. ***Payne v. Pauley,*** 337 F.3d 767 (7th Cir. 2003) In reviewing a motion for summary judgement, a court "may not make credibility determinations, weigh the evidence or decide which inferences to draw from the facts." ***Payne,*** at F3d 770. The record must be construed in a light most favorable to the non-movant, "avoiding the temptation to decide which party's version of the facts is more likely to be true." ***Payne,*** at F3d 770.

II. <u>The Statute of Limitations has not Expired.</u>

MasterBrands argues that the statute of limitations has expired as to several of the discreet acts which Cindy alleged in her complaint. However, MasterBrands misperceives the nature of Cindy's complaint. As the portions of Cindy's complaint quoted from above make clear, Cindy is alleging a hostile environment sexual harassment and discrimination claim. It is not a single incident of being called a "fucking bitch". Instead the gravamen of Cindy's complaint is that she endured a continuous course of discriminatory conduct at MasterBrands which led to her being forced to take a leave of

absence. Cindy was ultimately discharged from MasterBrands because her doctor believed that she was unable to return to work after 6 months of leave. (See Exhibit A)

The United States Supreme Court holds that in a hostile work environment case, "It does not matter, for purposes of the statute that some of the component acts of the hostile work environment fall outside the statutory period." *National Railroad Passenger Corp. v. Morgan,* 536 U.S. 101, 117 (2002). As long as a single act, contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of liability. *Morgan,* at U.S. 117. In *Morgan,* the Supreme Court noted that although many of the discreet acts of racial discrimination occurred outside of the limitations period, they still could form part of the nucleus of a hostile environment claim, and therefore summary judgment was inappropriate.

> To support his claims of a hostile environment, Morgan presented evidence from a number of other employees that managers made racial jokes, performed racially derogatory acts, made negative comments regarding the capacity of blacks to be supervisors, and used various racial epithets. *Id.,* at 1013. Although many of the acts upon which his claim depends occurred outside the 300 day filing period, *121 we cannot say that they are not part of the same actionable hostile environment claim. [FN13] On this point, we affirm.
>
> *National Railroad Passenger Corporation v. Morgan,* 536 U.S. 101, 118 122 S.Ct. 2061 (2002)

Here, MasterBrands ignores the basis of Cindy's claims. Just as in *Morgan,* Cindy's claims of sexual discrimination and harassment are a hostile environment claim.

9

Clearly, Cindy's doctor and her co-worker, Cheryl Doss, indicate that the stress of the repeated verbal and physical abuse caused Cindy to snap, so that she just couldn't take it anymore. (Ex. A and Doss Dep. pp. 44-5)

### III. <u>Summary Judgment is not warranted.</u>

MasterBrands puts all of its eggs in one basket. It argues only discreet acts occurring after the statute of limitations; it does not argue hostile environment or all of the acts constituting a hostile employment environment occurring both before and after the statute of limitations. The Seventh Circuit holds that "When a party moves for summary judgment on ground A, his opponent is not required to respond to ground B-a ground the movant might have presented but did not." *Malhotra v. Cotter &Co.*, 885 F.2d 1305 (7th cir. 1989) *superseded by statute on other grounds, Rush v. McDonald's Corp. 966 F.2d 1104, 1119-20 (7th Cir. 1992)*

Here, MasterBrands does not address Cindy's hostile environment claim and sexual discrimination and harassment. Instead MasterBrand focuses solely on a few discreet acts occurring after the statute of limitations; it never mentions the hostile environment theory or any acts occurring before the statute of limitations or at unspecified times. MasterBrands has therefore waived any argument as to Cindy's hostile environment claims contributing to her forced leave of absence and discharge because she was unable to return after six months.

Even so, MasterBrands ignores many disputed questions of fact as to events it did raise. For example, it argues that some women wore allowed to run machines. However,

the gist of Cindy's complaint was that men, not women were permitted to be cross-trained on the machines.

> Q. Tell me what men were cross-trained and when.
>
> A. Well, from the time I was there, for instance, my work station, rather than John taking me over to help out on a Costa, to help out on a saw, to help out on machines, John would always pick the men. And the men were being cross-trained at that time how to do the – the jobs on the machines.
>
> Q. What do you mean when you say cross-training?
>
> A. I mean they were being experienced – getting the experience of how to run machinery.
>
> Cindy Smith dep, pp. 67-68

Men got experience on the machines and women did not. That gave them the advantage for applying for machine operator positions that women didn't have.

MasterBrands argues that Cindy Smith was not present at the time of the stool throwing incident. However, Cindy's deposition specifically reveals that she saw Dustin do it once and that she reported it to her supervisor. (Smith dep. p. 107) MasterBrands argues that the stool incident could not form a basis by itself for a sexual harassment claim. Maybe so, however, MasterBrands ignores the fact that this incident was just one of series of pervasive incidents of sexual harassment which including being shoved, swatted, called a "fucking bitch" a "cunt", a "fat bitch" several times a week, being denied equal training opportunities and having to do more work than men. (Smith dep. pp. 54, 67,143, 148-9, 156, 169, 173) All of these incidents combined to form a hostile

environment. See (in addition to those incidents referred to above and those incidents specified in Cheryl Doss' deposition) e.g.

> Q. ... Is there anything else that we haven't covered that is relevant to your complaint that women were discriminated against or that you in particular were discriminated against?
>
> * * *
>
> A. Male employees, when they were injured, they were actually taken off the jobs, put elsewhere for light duty. And John would leave the women on the same jobs they had been injured on and doing the same – same thing.

Cindy Smith dep., pp. 155-156

Finally, MasterBrands argues that Cindy cannot show a link between the episodes of sexual discrimination and her discharge. However, MasterBrands never considers the hostile environment. Cindy's doctor, Dr. Kopacz clearly sets forth in his medical records that Cindy was overcome with post traumatic stress disorder arising from a course of conduct of sexual harassment at work which prevented Cindy from returning to work in the time prescribed by MasterBrands. These issues present questions of fact which prevent the award of summary judgment under both Supreme Court and Seventh Circuit precedents. ***National Railroad Passenger Corp. v. Morgan,*** 536 U.S. 101, 117 (2002); ***Malhotra v. Cotter &Co.,*** 885 F.2d 1305 (7th Cir. 1989)

## CONCLUSION

MasterBrand has not set forth a *prima facie* case to support summary judgment. For this reason and for the reasons set forth herein, the Plaintiff respectfully requests that MasterBrand's motion for summary judgment be denied.

       Cindy Smith, Plaintiff,

      By:   s/ Alexandra de Saint Phalle
          ALEXANDRA de SAINT PHALLE,
          Attorney Bar #: 0620815
          Attorney for Plaintiff
          LONDRIGAN, POTTER & RANDLE, P.C.
          1227 South Seventh Street
          Post Office Box 399
          Springfield, IL 62703
          Telephone: (217) 544-9823
          Facsimile: (217) 544-9826
          alex@lprpc.com


## CERTIFICATE OF SERVICE

  I hereby certify that on March 22, 2006, I presented the foregoing to the Clerk of the Court for filing and uploading to the CM/ECF system which will send notification of such filing to the following:

Kelley Bertoux Creveling
Baker & Daniels
300 N. Meridian Street, Su. 2700
Indianapolis, IN 46204
Kelley.Creveling@bakerd.com
(*Attorney for Defendant*)


         By: s/ Alexandra de Saint Phalle
         ALEXANDRA de SAINT PHALLE
         Bar Number: 0620815
         Attorney for Defendants
         LONDRIGAN, POTTER & RANDLE, P.C.
         1227 South Seventh Street
         Post Office Box 399
         Springfield, IL 62703
         Telephone: (217) 544-9823
         alex@lprpc.com