UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| CINDY SMITH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 04-2215 |
| | ) |
| MASTERBRAND CABINETS, INC., | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT'S CONSOLIDATED MOTION TO STRIKE AND REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

**MOTION TO STRIKE**

Defendant MasterBrand Cabinets, Inc. (MBCI), by counsel, respectfully moves the Court for an Order striking Plaintiff's Exhibit A, Additional Material Fact No. 1 and Response to Material Facts 32-46 which are contained in Plaintiff's Response on the grounds that this evidence constitutes inadmissible hearsay. In support of this Motion to Strike, MBCI states as follows:

1.  Plaintiff offers Exhibit A in support of her response which consists of a "Psychiatric Evaluation" dated April 14, 2003, a progress note dated October 6, 2003 with the name David Kopacz, M.D. typed at the bottom, a handwritten letter dated August 27, 2003 purportedly from Dr. Kopacz and a handwritten note on a prescription pad purportedly from Dr. Kopacz.

2.  The documents contained in Exhibit A are not authenticated by an affidavit or any other means. Plaintiff did not obtain Dr. Kopacz's deposition in order to determine his expert medical opinion on Plaintiff's medical condition and its causes.

3. Nevertheless, the medical records contained in Exhibit A are submitted in support of the propositions that:

    a. Plaintiff suffered from post-traumatic stress disorder ("PTSD")

    b. Plaintiff's PTSD was caused by MBCI's discriminatory conduct, and

    c. Plaintiff was unable to return to work at the end of her leave because of the PTSD

4. Plaintiff improperly submits Exhibit A for proof of a medical diagnosis and the cause of that medical condition.

5. The documents and the statement contained therein constitute inadmissible hearsay which cannot be considered by this Court on summary judgment. See, *Cook v. Hoppin*, 783 F.2d 684 (7th Cir. 1986); *Smith v. CSX Transportation*, 2006 WL 231494, *4 (S.D. Ind) ("a court generally should not rely on unsworn or unauthenticated documents in deciding a summary judgment motion. . . . This general rule has been applied specifically to bar unauthenticated medical records from consideration.") citing *Briggs v. Marshall,* 93 F.3d 355 (7th Cir. 1996) and *Markel v. Bd. of Regents of Univ. of Wisconsin Sys.*, 279 F.3d 906 (7th Cir. 2002).

6. Exhibit A as well as Plaintiff's response to Material Facts 32-46 and Plaintiff's Additional Material Fact 1 which are both premised upon Exhibit A should be stricken as inadmissible hearsay.

Wherefore, MBCI requests that Exhibit A be stricken from consideration along with Plaintiff's response to Material Facts 32-46 and Plaintiff's Additional Material Fact 1.

**REPLY IN SUPPORT OF SUMMARY JUDGMENT**

Defendant MasterBrand Cabinets, Inc. ("MBCI") submits its Reply Brief in Further Support of its Motion for Summary Judgment. MBCI maintains that based upon the undisputed facts summary judgment should be entered in its favor on all counts of Plaintiff's Complaint as there are no genuine issues of material fact.

## I.   INTRODUCTION

In her Response Brief, Smith essentially argues that summary judgment should be denied even though she never (with one exception) reported the alleged discriminatory conduct in accordance with MBCI's established equal employment opportunity policy and cannot recall when or how often most of the discriminatory incidents happened. Smith has failed to demonstrate there are material facts in dispute that make summary judgment inappropriate.

Smith's position that there is no statute of limitations period in a hostile environment case is incorrect. Smith asks the Court to consider all alleged acts regardless of their date of occurrence or relatedness. This is not the proper standard that should be applied by this Court in considering MBCI's motion for summary judgment and the specific contention that the bulk of Smith's claims are time barred. Moreover, even for those claims that survive a timeliness attack all but one were never reported by Smith under MBCI's EEO policy and in any event do not rise to the level of actionable harassment.

## II.   REPLY REGARDING MATERIAL UNDISPUTED FACTS

### A.   Reply to Plaintiff's Dispute of Defendants' Material Facts

Smith disputes MBCI's Facts Nos. 17, 18, 19, 26 and 28 only.

17. This does not appear to be an actual disputed fact. MBCI's Fact reads, "On July 19, 2001 Smith had an argument with co-worker Dustin Hall. (Smith Dep. 52:l. 24, 53:1-17)." MBCI's characterization of Smith's testimony is accurate. Smith testified:

3

> Q. What happened with Mr. Hall?
>
> A. I was working, pulling parts, putting in tubs, and Dustin had come over to the work area to return parts that had been on a previous tub. And I asked him what the problem was with those parts, and he informed me that, in not so nice words, that I was putting wrong parts on tubs and that I knew I was doing it. And he was very loud and - and upsetting.

(Smith Dep. 53:1-17)

MBCI does not dispute that Smith alleges Hall told her that she had made the mistakes on "fucking" purpose and that Hall had said something about five "fucking" tubs. MBCI requests that Fact No. 17 be treated as an undisputed material fact.

    18. This does not appear to be an actual disputed fact. MBCI's Fact reads, "As a result of the argument Smith was upset and left work 4.8 hours early. (Smith Dep. 52:l. 24)." Smith's response notes that she was "upset and crying." This is a distinction without a difference. Furthermore, whether the 4.8 hours were excused or not is immaterial as there is no allegation that Smith's employment was terminated in November 2003 because of 4.8 hours of work missed in 2001. To the extent Smith had complaints about the 4.8 unexcused hours her testimony indicates that she did little or nothing in response. Smith believes she raised the issue of the 4.8 hours with John Winschief and she believes in turn that Winschief raised it with Rhonda Gatons, formerly of Human Resources. (Smith Dep. 57:22-24, 58:1) However, Smith does not recall whether Winschief followed-up with her regarding the treatment of those 4.8 hours. She does not recall following-up herself with Winschief, does not remember whether she followed-up with Gatons and does not remember whether Gatons ever followed-up with her. (Smith Dep. 60:11-23) Smith does not recall whether she raised the issue of the 4.8 hours when she met with Winschief to discuss the written warning of July 2002. (Smith Dep. 61:20-22) Finally, Smith

testified she does not believe the hours were counted as unexcused because of her gender. (Smith Dep. 62:14-18)  MBCI requests that Fact No. 18 be treated as an undisputed material fact.

19.     This does not appear to be an actual disputed fact.  MBCI's Fact reads, "Smith subsequently received a verbal warning regarding her absenteeism in February 2002 and a written warning regarding her absenteeism in July 2002.  (MB0100, MB0099; Smith Dep. 50:2-24, 51:1-19)  Smith realized that the 4.8 hours counted against her attendance record by the time she received a verbal warning in February 2002.  (Smith Dep. 57:11-21)."  Smith's response does not address her attendance record and MBCI thus assumes that there is no dispute that Smith received verbal and written warnings and knew that the 4.8 hours were unexcused in light of those warnings.  Whether the 4.8 hours were excused or not is immaterial as there is no allegation that Smith's employment was terminated in November 2003 because of 4.8 hours of work missed in 2001 and because Smith does not believe that hours were counted as unexcused because of her gender.  (Smith Dep. 62:14-18)  MBCI requests that Fact No. 19 be treated as an undisputed material fact.

26.     This does not appear to be an actual disputed fact.  MBCI's Fact reads, "Ohrt's investigation did not corroborate that Winschief had made the comment or that Winschief discriminated against women.  (Ohrt Dep. 27:1-14, 36:4-7)"  MBCI's characterization of Ohrt's testimony and conclusions is accurate.  Smith's response quotes the comments of one female employee out of the many women interviewed.  (MB0737-0752)  MBCI does not dispute that this employee had unfavorable comments about Winschief.  Nevertheless, Ohrt testified that after interviewing all the women in the department and taking all the information under consideration he did not feel that the investigation corroborated Smith's complaints.  Smith may disagree with Ohrt's conclusions but Fact No. 26 is an accurate statement of the company's

5

conclusions. Her disagreement with the result does not create a disputed material fact particularly since Smith offers no evidence that Ohrt's investigation was flawed. MBCI requests that Fact No. 26 be treated as an undisputed material fact.

        28.     This does not appear to be an actual disputed fact. MBCI's Fact reads, " Winschief reported the complaint to Ohrt. Ohrt's investigation concluded that co-worker Dustin Hall had moved the stool because it was in an aisle way causing a trip hazard and that although the stool had been moved it had not been thrown. (MB0756-0757)" Smith's responses states only that she and witness Cheryl Doss dispute the results of Ohrt's investigation. Doss cannot be a competent witness on the issue of Ohrt's investigation because she did not see Hall throw the stool, does not know if anyone saw Hall do so and did not participate in Ohrt's investigation of the incident. (Doss dep. 153:16-22; 156:1-8)

        Ohrt testified that after conducting the investigation he did not feel that the investigation corroborated Smith's complaints that her stool had been thrown[1]. Smith may disagree with Ohrt's conclusions but Fact No. 28 is an accurate statement of the company's conclusions. Her disagreement with the result does not create a disputed material fact particularly since Smith offers no evidence that Ohrt's investigation was flawed. MBCI requests that Fact No. 26 be treated as an undisputed material fact.

        B.     **Reply to Statement of "Immaterial Facts"**

        Smith does not dispute the remaining Facts Nos. 5, 7-16, 20, 23, 29-31 and 32-46. Rather Smith states, virtually without explanation, that these facts are "immaterial."

        5.     MBCI withdraws this Fact.

---

[1] Smith's complaint only involves the nuisance of having to retrieve the stool that had been moved while she was away. There is no allegation that the stool was thrown at her or that she was in physical harm by movement of the stool. (Smith Dep. 105:11-24; 106:1-8)

7-12. Each of these facts deals with the job bid process, the jobs that were open and Smith's bid activity. Each of these facts is material in that Smith alleges that she was denied an opportunity to run machines (or in her words, to be trained on machines)[2] and the opportunity to do so is governed by a bid process. MBCI requests that Facts Nos. 7-12 be deemed admitted as undisputed.

13-16. Each of these facts deals with the particular machines that Smith wanted to run, whether she ever inquired as to training to enable her to do so and whether operating such a machine was within the scope of her job classification. Each of these facts is material in that Smith alleges that she was denied an opportunity to run machines yet testified that doing so was not within her job description, that she was unaware of what kind of training would be required and never inquired about obtaining training in order to run a machine. MBCI requests that Facts Nos. 13-16 be deemed admitted as undisputed.

20. Fact No. 20 identifies the date of a company sponsored trip. Smith alleges that a vulgar comment was made to her upon her return from the Tennessee trip but she could not recall when the trip occurred. Fact No. 20 is material to identifying when this incident happened. MBCI requests that Facts No. 20 be deemed admitted as undisputed.

23. Fact No. 23 identifies the date of termination of an employee whom Smith alleges hit her across the legs and buttocks. Smith was unable to recall when the incident occurred. Fact No. 23 is material to identifying the latest date upon which this incident could have happened. MBCI requests that Facts No. 23 be deemed admitted as undisputed.

---

[2] When asked at deposition what she meant by cross training, Smith testified that she meant on-the-job experience where someone learned how to run a machine while they performed that machine job. The remainder of her testimony focused on "operating" machinery. (Smith Dep. 68-69) Smith admits she does not know whether the people she saw operating machines obtained that opportunity through the bid process. (Smith Dep. 72:1-17)

29-31. Fact Nos. 29-31 involve the company's Equal Employment Opportunity, Workplace Harassment and Retaliation policy (EEO Policy) Smith's knowledge and (non)use of the policy and its reporting procedures. Smith's entire Complaint is based upon violations of this policy and thus it is certainly material. Smith claims the EEO Policy is irrelevant because it was not followed but provides absolutely no evidence that the policy was not followed. While Smith alleges she went to her supervisor to make complaints, and we may be required to accept this as true for summary judgment purposes, the EEO Policy required her to complain to HR, The VP of Safety or call the hotline, not her supervisor. MBCI requests that Facts Nos. 29-31 be deemed admitted as undisputed.

32-46. Fact Nos. 32-46 deal with the company's leave of absence policy and the leave granted to Smith as compared to other employees as well as the reason for her termination. Smith alleges she was provided with less leave time than men. Fact Nos. 32-46 conclusively and objectively demonstrate that Smith's allegation is without merit. Moreover, Smith provides no evidence that Fact Nos. 32-46 are incorrect statements of fact. Rather, she cites only the reason why she was unable to return to work at the end of her leave. This does not create disputed material facts with respect to how the leave policy was administered or how much leave time was available to Smith or any other employee. Furthermore, Smith impermissibly relies on inadmissible hearsay evidence to establish the reason for her inability to return to work. MBCI requests that Facts Nos. 32-46 be deemed admitted as undisputed.

C. **Reply to Additional Material Fact**

1. Smith's additional material fact gives a medical diagnosis and cause for that medical condition which is unsupported by admissible evidence. See MBCI's Motion to Strike. Furthermore, even if Smith had this medical condition it does not create a dispute as to any material fact.

8

III. **ARGUMENT**

    A. <u>**The Continuing Violation Doctrine Does Not Apply**</u>

Smith asks this Court to apply the continuing violation doctrine to save her claims from the application of the statute of limitations. In doing so, however, Smith utterly fails to identify for the Court the "continuous course of discriminatory conduct" or link those events together. Instead, she asserts that because one act occurred within the limitations period, all acts (which she has not particularly defined for the Court) can be brought into her complaint. This is incorrect.

In order for the continuing violation doctrine to apply, Smith must demonstrate that the acts occurring outside the limitations period are connected in some way to the triggering event. See, *Struif v. MK-1 et al*, 2004 WL 2921864 (N.D. Ill). When examining a continuing violation claim, the Court can look to three factors: 1) the relatedness of the subject matter of the acts, 2) the frequency of the acts, and 3) their degree of permanence. *Id.* at *8. This last factor looks at whether "the act complained of should have made an employee realize she had a duty to assert her rights." *Id.*

Applying the third factor in the analysis to this case, Smith should have realized she had a duty to assert her rights. Assuming Smith's allegations to be true, in 2001 and 2002, all outside the limitations period, Smith had an argument with a male co-worker who swore at her and reduced her to tears, was hit on the back of the legs by another male co-worker, was subjected to vulgar comments by another male co-worker regarding a company sponsored trip to Tennessee and believed she was being treated differently with respect to light duty assignments because of her gender. Yet despite all of this Smith chose to sleep on her rights and not report the conduct in accordance with MBCI's EEO policy or file a charge. Smith's belated filing should not serve to revive these stale claims. It strains the imagination that Smith would be

9

unaware until September 2003 that any of these acts going back to 2001 might properly have been the subject of an internal report or charge.

As the *Struif* Court noted, "a significant gap in time between the act that triggered the discrimination charge and any acts outside the limitations period may bar Plaintiff from relying on or recovering for the acts that occurred outside the limitations period. Plaintiff can receive relief for a time-barred event by demonstrating a connection between it and another event that falls within the limitations period." *Id.* at *7. Smith makes no such connections between, for example, comments made to her in November 2001 after returning from a company sponsored trip to Tennessee or being hit on the legs by Art Decker on an unknown date prior to September 2002 and the termination of her employment upon exhaustion of all available leave. Smith gives no explanation as to why she waited some two years before filing a charge.

B.    **Smith Failed to Follow the Established EEO Policy**

It is undisputed that Smith was aware MBCI had in place a policy on equal employment opportunity, workplace harassment and retaliation and that this EEO policy instructed employees to report discrimination to Human Resources, the Vice President of Safety, Environmental and Risk Management or on a confidential password protected telephone hotline. (MBCI Fact No. 30; MB0709). It is also undisputed that Smith was aware of the hotline and never called the hotline and only used the reporting procedures to report the "break a nail" comment. (MBCI Fact Nos. 30, 30; Smith Dep. 89:1-3, 10-11). In fact, although aware of the reporting procedures Smith admits she did not exercise those reporting options. (Smith Dep. 177:8-18)

10

Aside from the "break a nail" comment, with respect to every other incident Smith failed to follow the policy.³ Smith's only explanation is that she felt she should be able to report to her supervisor, Winschief, instead. (Smith Dep. 83:15-20, 89:1-14, 106:22-23, 149:18-24, 175:1-24, 177:12-18) Yet, when she did report to Winschief he handled the situation. For example, when co-worker Brickey poked Smith, she did not find the incident sufficiently objectionable to bother to report it to Human Resources nor did she call the hotline. (Smith Dep. 83:15-16, 21-22, 89:1-6) She acknowledges that Winschief dealt with the incident and that Brickey was made to apologize. (Smith Dep. 83:18-20; 86:16-22) Smith is dissatisfied with how her complaint was handled only because MBCI failed to involve the police. (Smith Dep. 87:2-7) Nevertheless, Smith apparently did not believe it sufficiently important or serious to call the police herself. (Smith Dep. 87:11-14)

Regardless, a report to Winschief was not notification to MBCI under its EEO Policy of a suspected violation. Smith has not articulated a valid reason for her disregard of the EEO policy's reporting procedures. Having failed to notify the company of her complaints over several years, Smith should not now be allowed to hold the company liable for those complaints. See, *Durkin v. City of Chicago*, 341 F.3d 606, 612 (7th Cir. 2003)("When an employer designates a 'point person' to accept complaints . . . this person becomes the natural channel for the making

---

³ In her response, Smith makes much of her allegation that co-workers Dustin Hall and Allan Brickey called her names and cussed at her. Although she says this happened all of the time while she was at work she can only recall that she reported it at least once to Winschief but doesn't know when she reported it or whether she reported it more often. (Smith Dep. 149:18-24, 150:1-11) As discussed above, such conduct was never the subject of a report under the EEO policy's reporting procedures. Moreover, "Title VII does not impose a legal duty to purify the language of the workplace of profanity." *Romaniszak-Sanchez v. Int'l Union of Operating Engineers*, 121 Fed. Appx. 140, 145 (7th Cir. 2005)(complaints did not involve sexual comments but rather rampant profanity).

11

and forwarding of complaints, and complainants can be expected to utilize it in the normal case.")
MBCI is not liable for the alleged co-employee harassment because although it had in place a mechanism for Smith to report her complaints she failed to utilize that mechanism. *Id.*

### C. Smith's Termination Was the Result of Consistent Application of the Leave of Absence Policy

Even if the Court is willing to consider the inadmissible medical opinion that Smith suffered from PTSD related to her work, such evidence does not support Smith's allegation that her termination upon the exhaustion of all available leave was merely a pretext for retaliation. Smith provides no evidence that she was entitled to greater leave under the Company's attendance policy. In fact, she goes so far as to label all of the proffered facts about the company's leave policy and application of that policy as immaterial. Smith also fails to cite any support for her contention that MBCI was obligated to grant her greater leave than allowed to all other MBCI employees. Even if MBCI had such an obligation it was not on notice that Smith needed further leave since Smith had only made one report under the EEO policy and does not allege that she ever requested additional leave.

### IV. CONCLUSION

Smith's untimely claims are not saved by the continuing violation doctrine. The few remaining timely claims (break a nail comment, stool throwing incident and her termination) do not rise to the level of a Title VII violation. Moreover, Smith utterly failed in her obligation to follow the reporting procedures in the EEO policy and should not now be able to hold the Company liable after sitting on her rights for years. MBCI requests that summary judgment be entered in its favor.

Respectfully submitted,

s/Kelley Bertoux Creveling
Mark J. Romaniuk (#15255-49)
Kelley Bertoux Creveling (#19309-49)
BAKER & DANIELS LLP
300 N. Meridian Street, Suite 2700
Indianapolis, IN 46204
Phone: (317) 237-0300
Fax:  (317) 237-1000
mark.romaniuk@bakerd.com
kelley.creveling@bakerd.com

*Attorneys for Defendant*

BDDB01 4327610v1

## CERTIFICATE OF SERVICE

I certify that on the 20 day of April, 2006, a copy of the foregoing Defendant's Consolidated Motion to Strike and Reply in Support of Its Motion for Summary Judgment was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Alexandra de Saint Phalle
Londrigan, Potter & Randle, P.C.
1227 South Seventh Street
P.O. Box 399
Springfield, IL 62703

                                          s/Kelley Bertoux Creveling