**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION**

| | |
|---|---|
| **CINDY SMITH,** ) | |
| ) | |
| **Plaintiff,** ) | |
| v. ) | **Case No. 04-CV-2215** |
| ) | |
| **MASTERBRAND CABINETS, INC.,** ) | |
| ) | |
| **Defendant.** ) | |

**OPINION**

This case is before the court for ruling on the Motion for Summary Judgment (#31) filed by Defendant, Masterbrand Cabinets, Inc. Following this court's careful consideration of the arguments of the parties and the documents provided by the parties, Defendant's Motion for Summary Judgment (#31) is GRANTED. Accordingly, Defendant's Agreed Motion to Continue Trial and Final Pretrial Conference (#38) is MOOT.

FACTS[1]

Plaintiff, Cindy Smith,[2] began working for Defendant on May 18, 2001. Throughout the course of her employment, Plaintiff worked in the door plant as a Material Handler on second shift. Plaintiff testified that, during her employment with Defendant, men were allowed to call women names. Specifically, Plaintiff testified that Allen Brickey and Dustin Hall called her "lazy fat ass," "fucking bitch," "fucking fat bitch" and "cunt." Plaintiff testified that other women were also called offensive names by Brickey, Hall and other male employees. Plaintiff testified that this occurred several times a week from the time she started working at Defendant. Plaintiff testified that, in the

---

[1] The statement of facts in this case is based upon Defendant's Statement of Undisputed Facts, Plaintiff's Response, and the documents submitted by the parties.

[2] During her employment, Plaintiff's name was Cindy Heiman. She was married on July 3, 2003, and is now known as Cindy Smith.

beginning, she reported this conduct to her supervisor, John Winschief. She testified that she was not sure how many times she reported it, but it was more than once. Plaintiff testified that she also reported this conduct to Rhonda Gatons and "possibly" to Kord Kozma. Plaintiff stated that she did not recall when she made these complaints. During her testimony, Plaintiff was unable to provide even approximate dates or times for any of the conduct she recounted and answered numerous questions by stating, "I don't remember." Gatons testified that she was Employee Relations Manager for Defendant until 2001 or 2002 and did not recall receiving any complaints from Plaintiff.

Cheryl Doss, who was employed at Defendant during the same time period as Plaintiff, testified that she heard male employees call Plaintiff "fucking bitch" on more than one occasion. Doss also testified that offensive language, specifically the word "fuck," was frequently used by male employees. Doss testified that she "told them that they were not to talk to me that way" and "after that when I was around they usually did not say that." Doss also testified that this kind of language was directed at both women and men and that there was at least one female employee who "cussed."

Defendant has a four-page "Policy on Equal Employment Opportunity, Workplace Harassment and Retaliation." This document included a detailed explanation of Defendant's policy prohibiting sexual harassment. The document also stated:

> Employees who believe that they have either witnessed or been subjected to Discrimination shall immediately report the Discrimination to [Defendant]. Employees have a duty to report Discrimination to [Defendant] in order to protect themselves, their

2

> colleagues and the company. [Defendant] cannot investigate and take appropriate action if the conduct and behavior is not reported.
>
> Employees have options for reporting Discrimination. To ensure that a report is properly recorded, an employee should report the Discrimination to Human Resources. In the event Human Resources is not available or the employee is uncomfortable in reporting the conduct to Human Resources, the employee may report the Discrimination directly to the Vice President of Safety, Environmental and Risk Management who can be reached at 812-634-0543. Employee may also call a confidential password-protected voicemail telephone hot-line at 1-888-786-2949. Only a member of the Corporate Compliance Committee will retrieve voice mail messages left on that telephone line.

Plaintiff testified that, on most occasions, she reported conduct to her supervisor, Winschief. She testified that she did not call the hot-line to report any conduct by her co-workers.

Plaintiff testified that she missed almost five hours of work on one occasion because her co-worker, Hall, yelled at her and accused her of making mistakes "on fucking purpose." Defendant submitted documentation regarding this lost time which showed that it occurred on July 19, 2001. Plaintiff testified that she was upset and crying and reported this incident to Winschief. Plaintiff stated that Winschief told her that "he was not going to put up with people in our department being disrespectful [and] using that kind of language" and that he would talk to Hall about it. Plaintiff

testified that she was selected to go on a company-sponsored trip to Tennessee related to wood quality. She testified that, when she returned, a co-worker, Maury Laurence, told her that the only reason she got to go was because she "sucked [Winschief's] dick." Defendant provided documentation which showed that the Tennessee trip occurred in November 2001.

Plaintiff testified that an incident occurred where Brickey shoved her and pushed her on the chest. Plaintiff stated that she spoke to both Winschief and the second shift superintendent, David Pantier, about the incident. Plaintiff testified that she told Pantier she wanted to call the police. Plaintiff testified that she was not allowed to call the police but that Pantier stated that, if it ever happened again, he would call the police. Plaintiff testified that Pantier made Brickey apologize to her later that night. Plaintiff testified that she had no idea as to when this incident occurred, but it may have been in 2001 or 2002. Plaintiff also testified that Art Decker hit her with a door part "right across the butt" which caused "actual bruising" on the back of her legs and butt. Plaintiff testified that she could not recall when this incident occurred but stated that she did report it to Winschief. Defendant provided documentation to show that Decker's employment was terminated on September 9, 2002, so that the incident had to have occurred prior to that date.

Plaintiff testified that men in her department were allowed to work on machines and she was never put on a machine. Plaintiff also complained that she was never allowed to drive a fork truck. Plaintiff named Hall, Brickey and Laurence as male employees in her department who were allowed to work on machines. Plaintiff testified that she did not know the job title of these employees, nor did she have any idea of the time period she was talking about. Plaintiff stated that, in her opinion, male employees were allowed to be cross-trained on machines and women were not. Defendant submitted documentation to show that employees with the job classification of Material Handler did

4

not run the machines Plaintiff stated she wanted to be "cross-trained" on. Instead, these machines were run by employees with the job classification of Machine Operator I. Defendants also submitted documentation that Machine Operator I positions became available numerous times during Plaintiff's employment. These positions are awarded through a job bid process and are awarded on the basis of seniority. Plaintiff only bid on two of these positions, and was not selected because she was not the most senior employee who bid on the position. Women employees were the successful bidder on five of these positions during the time Plaintiff was employed by Defendant.

Plaintiff testified that, at some point, new machines were being brought into the department. She asked Winschief if everyone was going to be allowed to be trained on the new machines. Plaintiff testified that Winschief stated that "the machines were expensive machines and that I might break a fingernail and something to the effect that it would be too expensive to replace parts to have women trained on them." The evidence shows that, in January 2003, Plaintiff complained to Matthew Ohrt, who was Defendant's Employee Relations Manager at that time, about this remark by Winschief.[3] Ohrt conducted an investigation and spoke to every woman who worked in Plaintiff's department. Ohrt concluded that no sex discrimination took place. A meeting was held in Ohrt's office following the investigation. Plaintiff testified that Ohrt told her that her allegations were not true. Plaintiff testified that Ohrt also accused her of preferring married men and of leaving notes on Winschief's windshield. Plaintiff testified that she did not leave notes on Winschief's windshield, but did ask him out for drinks four or five times.

Plaintiff testified that she had work related injuries to her shoulder, wrist, and knee while she was employed by Defendant. She testified that, when male employees were injured, they were taken

---

[3] Ohrt eventually replaced Kord Kozma as Human Resources Manager.

5

off their jobs and given light duty work whereas female employees were required to keep doing the same thing. Plaintiff testified that she did receive light duty but that she "was not taken off [her] job right away to go to light duty." On March 7, 2003, Plaintiff complained to Winschief that a stool she was using at work was being "thrown" over to the other side of the machine by Hall. Plaintiff stated that she needed the stool to follow her doctor's orders that she needed to sit for a period of time and then stand for a period of time. Plaintiff testified that she saw Hall throw the stool once, possibly twice. Winschief reported the complaint to Ohrt. Ohrt conducted an investigation and concluded that Hall had moved the stool because it was in an aisle way causing a trip hazard. Ohrt also concluded that, although the stool was moved, it had not been thrown. Plaintiff testified that Ohrt called her into his office to discuss her complaint. Plaintiff testified that Ohrt told her that she was making false accusations about other employees. Plaintiff also testified that Ohrt told her she needed to make things right with God. Ohrt had a much different recollection of the meeting. He testified that he did not accuse Plaintiff of making false accusations, but counseled her on the use of words, especially when making accusations toward others. Ohrt also stated that Plaintiff was very emotional at the meeting and he gave her an card about the Employee Assistance Program (EAP) because he thought she was troubled.

     Plaintiff began a leave of absence on April 7, 2003. Defendant had implemented a comprehensive leave of absence policy in March 2002. The policy defined the circumstances under which employees could be absent from work on an approved leave of absence. The policy provided for leave in accordance with the Family and Medical Leave Act as well as additional medical leave which was discretionary with Defendant. Employees, including Plaintiff, received training on the policy in March 2002. In June 2003, Defendant's leave of absence policy was modified such that

the total amount of leave available to employees was reduced from 12 months to 6 months. Defendant determined that it would be unfair to suddenly terminate the employment of employees out on leave who had already received six months of leave at the time the policy changed. These employees, Joyce Good and Brad Hug, were therefore grandfathered and were allowed a total of 12 months leave. Employees who were out on leave who had not yet been on leave for six months were notified of the change in policy and the date their leave time would be exhausted under the new policy. These employees were Plaintiff, James Poundstone, and Martha McCoskey. Plaintiff received a letter on September 5, 2003, which stated that, with the implementation of the revised Leave of Absence policy, her medical leave of absence would expire on November 5, 2003. The letter stated that if she was unable to return to an open position by that date, her employment would be terminated. Plaintiff's employment was terminated on November 17, 2003, because she had exhausted all available leave time and remained unable to return to work. Plaintiff testified that she believed that Brad Hug was treated better because he was allowed to have a full year of leave.

At her deposition, which was taken on November 15, 2005, Plaintiff testified that she still suffers from depression and anxiety attacks and is unable to work. She testified that she takes medication for her anxiety attacks. Plaintiff provided medical records from her doctor, Dr. Kopacz. In these records, Dr. Kopacz stated that Plaintiff is suffering from post traumatic stress disorder based upon the incidents of harassment during her employment with Defendant.

On September 10, 2003, Plaintiff filed her first charge of discrimination with the Illinois Department of Human Rights and the Equal Employment Opportunity Commission (EEOC). Plaintiff stated that she had been discriminated against based upon her sex and religion, and had also suffered retaliation. She stated in the charge that she had been the victim of severe and pervasive

sexual harassment. On August 31, 2004, Plaintiff filed a second charge of discrimination and stated that her discharge was based upon gender discrimination and retaliation.

Plaintiff received a Notice of Right to Sue on July 29, 2004, and filed her Complaint (#1) on October 5, 2004. Plaintiff alleged that Defendant was liable under Title VII of the Civil Rights Act of 1964 for sex discrimination, sexual harassment and retaliatory conduct. In her Complaint, Plaintiff did not include any claim of discrimination based upon religion.

On February 28, 2006, Defendant filed a Motion for Summary Judgment (#31), a Brief in Support (#32) and supporting documentation (#33). Plaintiff filed her Response (#34) and supporting documentation on March 22, 2006. Defendant filed its Reply (#36), which included a Motion to Strike, on April 20, 2006. On May 3, 2006, Plaintiff filed her Response to Motion to Strike (#37).

## ANALYSIS

### I. SUMMARY JUDGMENT STANDARD

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In ruling on a motion for summary judgment, a district court has one task and one task only: to decide, based upon the evidence of record, whether there is any material dispute of fact that requires a trial. Waldridge v. American Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994). "A genuine issue for trial exists only when a reasonable jury could find for the party opposing the motion based on the record as a whole." Michas v. Health Cost Controls of Ill., Inc., 209 F.3d 687, 692 (7th Cir. 2000), quoting

Pipitone v. United States, 180 F.3d 859, 861 (7th Cir. 1999). In making this determination, the court must consider the evidence in the light most favorable to the party opposing summary judgment. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970); Adams v. Wal-Mart Stores, Inc., 324 F.3d 935, 938 (7th Cir. 2003). However, neither the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment. Michas, 209 F.3d at 692. Moreover, a plaintiff cannot defeat summary judgment by raising immaterial issues of fact. See Jordan v. Summers, 205 F.3d 337, 345 (7th Cir. 2000).

## II. STATUTE OF LIMITATIONS

Defendant first argues that the statute of limitations bars the vast majority of Plaintiff's complaints. Defendant noted that, under Title VII, Plaintiff was required to file her charge within 300 days after the alleged unlawful employment action. See Tinner v. United Ins. Co. of Am., 308 F.3d 697, 707 (7th Cir. 2002). Defendant argued that any claims which occurred before November 14, 2002, are time-barred because they occurred more than 300 days prior to the date Plaintiff filed her first charge of discrimination, September 10, 2003. Defendant contended that the only incidents which the evidence shows occurred after November 14, 2002, are Winschief's comment in January 2003 that Plaintiff might break a nail if allowed to operate a machine, the stool incident involving Hall, and her termination.

In her Response, Plaintiff argued that, based on Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002), her claims are not time-barred because "she endured a continuous course of discriminatory conduct at [Defendant] which led to her being forced to take a leave of absence." Plaintiff stated that she was diagnosed with post-traumatic stress disorder as a result of a pattern of

9

hostile environment discrimination at work.[4] Plaintiff stated that her claims of sexual discrimination and harassment are a hostile environment claim which is not time-barred under Morgan.

In Morgan, the United States Supreme Court held that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." Morgan, 536 U.S. at 113; Lucas v. Chicago Transit Authority, 367 F.3d 714, 723 (7th Cir. 2004). However, the Court also stated that "[h]ostile environment claims are different in kind from discrete acts" because "[t]heir very nature involves repeated conduct." Morgan, 536 U.S. at 115. "Such claims are based on the cumulative effect of individual acts." Morgan, 536 U.S. at 115. Therefore, "[p]rovided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." Morgan, 536 U.S. at 117; see also Lucas, 367 F.3d at 724; Hildebrandt v. Ill. Dep't of Natural Res., 347 F.3d 1014, 1027 (7th Cir. 2003). However, "[w]ithout a hostile act within the limitations period, [this court] cannot consider component hostile acts that occurred outside the limitations period." Lucas, 367 F.3d at 724. "Characterizing a series of acts as a 'hostile environment' does not necessarily make it so, nor does it serve as a cure-all for a blown statute of limitations." Dixon v. Ill. Dep't of Natural Res., 2005 WL 2170068, at *2 (S.D. Ill. 2005).

This court notes that, in this case, it has been hindered by Plaintiff's failure to point to specific actions she claims contributed to a hostile work environment. See Lucas, 367 F.3d at 724-25. This court further notes that much of Plaintiff's testimony related to "undated, unspecified"

---

[4] In its Reply, Defendant has asked this court to strike Plaintiff's documentation from Dr. Kopacz regarding his diagnosis of post-traumatic stress disorder. Defendant argued that the documents submitted by Plaintiff were not authenticated by an affidavit or any other means. Plaintiff has filed a response and has also submitted Dr. Kopacz's affidavit. In his affidavit, Dr. Kopacz stated that the documents were true and accurate copies of his office records regarding Plaintiff. This court concludes that there is no basis for striking Plaintiff's documentation.

assertions. See Lucas, 367 F.3d at 723. However, considering the evidence in the light most favorable to Plaintiff, this court concludes that the acts of alleged harassment which the facts show occurred during the 300 days prior to the filing of Plaintiff's first charge of discrimination are: (1) Winschief's statement that Plaintiff might break a fingernail if she was allowed to run a machine; (2) Hall's actions in moving or "throwing" the stool; and (3) Plaintiff's meetings with Ohrt regarding her complaints. Plaintiff argues that she also suffered verbal abuse and was called a "fucking bitch" during this period. This court concludes that these facts do not constitute sexual harassment, so there is no "act contributing to the claim" which occurred within the 300 day filing period.

In order to establish a prima facie case for a hostile environment claim, a plaintiff must show that: (1) she was subjected to unwelcome sexual harassment in the form of sexual advances, requests for sexual favors or other verbal or physical conduct of a sexual nature; (2) the conduct was severe or pervasive enough to create a hostile work environment; (3) the conduct was directed at her because of her sex; and (4) there is a basis for employer liability. Whittaker v. N. Ill. Univ., 424 F.3d 640, 645 (7th Cir. 2005). In determining whether an actionable hostile environment claim exists, courts look to "all the circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Morgan, 536 U.S. at 116, quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993). To qualify as hostile, a work environment must be objectively and subjectively offensive. See Ezell v. Potter, 400 F.3d 1041, 1047 (7th Cir. 2005). That is, it must be a work environment that a reasonable person would find hostile or abusive, and one that the plaintiff in fact perceived to be hostile or abusive. See Ezell, 400 F.3d at 1047-48. The alleged harassment must be both subjectively and objectively so severe

or pervasive as to alter the conditions of her employment and create an abusive work environment. Whittaker, 424 F.3d at 645. The threshold for plaintiffs is high, as "[t]he workplace that is actionable is one that is 'hellish.'" Whittaker, 424 F.3d at 645, quoting Perry v. Harris Chernin, Inc., 126 F.3d 1010, 1013 (7th Cir. 1997).

First, this court concludes that Winschief's statement that Plaintiff might "break a fingernail" if she was allowed to run one of the new machines does not constitute sexual harassment. Plaintiff has not even attempted to dispute Defendant's statement that employees in Plaintiff's job classification did not run the machines. In addition, Plaintiff has not presented any evidence to support her bare assertion that she was not allowed to "cross-train" on machines while male employees were allowed to do so. The evidence submitted by Defendant showed that, in order to run the machines Plaintiff was interesting in running, she had to be the successful bidder for a Machine Operator position. It is undisputed that Plaintiff only bid on an open Machine Operator position twice, and was unsuccessful because of her lack of seniority. It is also undisputed that female employees were the successful bidder for that position on five occasions during Plaintiff's employment. The evidence showed that Plaintiff was not in a job classification where she could be trained on machines.[5] Winschief's statement was certainly misguided and lacking in sensitivity but did not constitute sexual harassment under the facts of this case. Title VII "do[es] not mandate

---

[5] This court notes that, to the extent that Plaintiff is claiming sex discrimination based upon the failure to train her on machines, based upon the failure to permit her to drive a fork-truck, and based upon her claims that she, and other female employees, were not provided with light duty work the same as male employees, those claims are clearly time-barred. This court concludes that the acts complained of must be considered discrete acts of discrimination which are only actionable if they took place within the timely filing period. See Morgan, 536 U.S. at 114; Tinner, 308 F.3d at 708. Plaintiff testified that she did not know when any of these events occurred and agreed that some of this conduct may have taken place in 2001. Defendant is correct that Plaintiff did not meet her burden to present facts to raise a genuine issue of fact as to whether these claims arose during the limitations period. See Dority v. City of Chicago, 2001 WL 1155286, at *9 (N.D. Ill. 2001), aff'd, 50 Fed. Appx. 760 (7th Cir. 2002). It is well settled that conclusory statements, not grounded in specific facts, are not sufficient to avoid summary judgment. Lucas, 367 F.3d at 726.

admirable behavior from employers." See Russell v. Bd. of Trs. of Univ. of Ill., 243 F.3d 336, 343 (7th Cir. 2001). Teasing, offhand comments, and isolated, non-egregious incidents are not sufficient to constitute sexual harassment. See Farragher v. City of Boca Raton, 524 U.S. 775, 788 (1998).

This court next concludes that Hall's actions, even accepting Plaintiff's assertion that he threw the stool to the other side of the machine several times, also cannot be considered sexual harassment. There is absolutely no evidence that Hall's actions in throwing the stool were directed at Plaintiff because of her sex.

In addition, there is no evidence that Ohrt's handling of Plaintiff's complaints in January 2003 and March 2003 constituted sexual harassment. Ohrt investigated Plaintiff's complaints and conducted meetings where he discussed the results of his investigation with Plaintiff. While it is clear that Plaintiff did not like the way Ohrt handled the meetings and felt that she was being accused of making false accusations, the record is devoid of any evidence that Ohrt's actions were in any way based upon Plaintiff's sex.[6]

Finally, the testimony of Plaintiff and Doss about verbal abuse by male co-workers is insufficient to show a hostile environment under the facts of this case. Even accepting Plaintiff's testimony that bad language and name-calling occurred on a regular basis during her employment at Defendant, including during the 300 days prior to the filing of Plaintiff's first charge of discrimination, the evidence does not show that this conduct constituted sexual harassment. Based upon Doss's testimony, which Plaintiff provided and has relied upon, the use of the word "fuck" at the door plant was directed at both men and women. Doss also testified that at least one female

---

[6] This court also notes that, to the extent that Plaintiff may be claiming that Ohrt's actions were in retaliation for her claims, this court agrees with Defendant that Plaintiff was not disciplined in any way and the terms and conditions of her employment were not affected by her complaints. Therefore, Ohrt's conduct did not amount to an "adverse employment action" which is a required element of a claim of retaliation. See Whittaker, 424 F.3d at 647-48.

employee used bad language.  "Because Title VII is premised on eliminating discrimination, inappropriate conduct that is inflicted on both sexes, or is inflicted regardless if sex, is outside the statute's ambit." Wieland v. Dep't of Transp. of State of Ind., 98 F. Supp. 2d 1010, 1019 (N.D. Ind. 2000), citing Holman v. State of Ind. & INDOT, 211 F.3d 399, 406 (7th Cir. 2000).  Title VII is not a "general civility code." See Farragher, 524 U.S. at 788.  Title VII was "'not designed to purge the workplace of vulgarity,' for a certain amount of 'vulgar banter tinged with sexual innuendo' is inevitable in the modern workplace." Gleason v. Mesirow Fin., Inc., 118 F.3d 1134, 1144 (7th Cir. 1997); quoting Baskerville v. Culligan Int'l Co., 50 F.3d 428, 430 (7th Cir. 1995).  Accordingly, "occasional vulgar banter, tinged with sexual innuendo, of coarse or boorish workers" does not constitute actionable sexual harassment.  Rogers v. City of Chicago, 320 F.3d 748, 753 (7th Cir. 2003); Baskerville, 50 F.3d at 430.

Plaintiff has argued that she was sexually harassed because she was called a "fucking bitch" on many occasions.  However, the Seventh Circuit has held that the term "bitch" is not necessarily a gendered term which shows that the use of this term was based upon sex.  See Galloway v. Gen. Motors Serv. Parts Operations, 78 F.3d 1164, 1168 (7th Cir. 1996), abrogated as to continuing violation by Morgan, 536 U.S. 101; see also Ryan v. Town of Schererville, Ind., 2005 WL 1172614, at *19 (N.D. Ind. 2005).  Plaintiff testified that she was also called another, more gendered term but did not provide any specifics about when or how often that term was used.

This court concludes that Plaintiff's allegations about language at her workplace are similar to the allegations made in Wieland.  In that case, the district court stated that there was "no question [the plaintiff] subjectively believed her environment was hostile" but, like Plaintiff here, her deposition was full of "I don't remember," "I can't remember," with little specific factual

information about her complaints.  See Wieland, 98 F. Supp. 2d at 1019.  In Wieland, the district court concluded that the evidence did not show that the behavior complained of was "harassment of a sexual nature that is so severe as to alter the terms of [the plaintiff's] employment." Wieland, 98 F. Supp. 2d at 1019.  Instead, the court concluded that the behavior was that of "coarse and boorish workers with vulgar banter from both sexes" which did not amount to actionable sexual harassment.  Wieland, 98 F. Supp. 2d at 1020.  This court concludes that, based upon Plaintiff's testimony and Doss's testimony about the language used by Defendant's employees, a similar result is warranted in this case.

The law is clear that "acts that contribute to a hostile work environment may be considered so long as one of the contributing acts occurred within the limitations period." Hildebrandt, 347 F.3d at 1036 n.18, citing Morgan, 536 U.S. at 117.  However, "[a]cts . . . so discrete in time or circumstances that they do not reinforce each other cannot reasonably be linked together into a single chain, a single course of conduct, to defeat the statute of limitations." Lucas, 367 F.3d at 727, quoting Tinner, 308 F.3d at 708.  In this case, Plaintiff has not shown that any acts which contributed to a hostile work environment occurred during the 300 days prior to the filing of her first charge of discrimination so that they could be linked to earlier acts outside the limitations period. For this reason, Defendant is entitled to summary judgment on Plaintiff's claim of sexual harassment.

## II. EMPLOYER LIABILITY

Defendant has also argued that Plaintiff has not shown that she followed Defendant's reporting policy in reporting most of the incidents she has complained of.  In response, Plaintiff has just argued that this fact is "immaterial."  This court cannot agree.

Defendant can only be liable for Plaintiff's co-worker's allegedly harassing conduct if it "knew or should have known" about the harassment she experienced and failed to take reasonable steps to remedy the situation. See Wyninger v. New Venture Gear, Inc., 361 F.3d 965, 976 (7th Cir. 2004). "An employer may defend against harassment charges by showing it exercised reasonable care to discover and rectify promptly any sexually harassing behavior." Durkin v. City of Chicago, 341 F.3d 606, 612 (7th Cir. 2003). In this case, there is no dispute that Defendant had a detailed policy on sexual harassment which specified a procedure for reporting discrimination, including the availability of a "hot-line" for reporting discriminatory conduct. This court concludes that the evidence clearly shows that Defendant had a "meaningful process" for employees to seek redress for their concerns. See Durkin, 341 F.3d at 612. "An employer is not liable for co-employee sexual harassment when a mechanism to report the harassment exists, but the victim fails to utilize it." Durkin, 341 F.3d at 612-13; citing Murray v. Chicago Transit Auth., 252 F.3d 880, 889 (7th Cir. 2001). For a plaintiff to survive summary judgment, "she must show she provided the employer with enough information so that a reasonable employer would think there was some probability that she was being sexually harassed." Durkin, 341 F.3d at 612, citing Hall v. Bodine Elec. Co., 276 F.3d 345, 356 (7th Cir. 2002).

In this case, Plaintiff was very vague regarding her reporting of incidents of alleged harassment and testified that, for the most part, she reported conduct to her supervisor. She has not disputed that she did not follow Defendant's written reporting policy when reporting most incidents of alleged harassment. Based upon Plaintiff's testimony, there is no evidence that Defendant knew or should have known that Plaintiff considered the conduct sexually harassing. See Wieland, 98 F. Supp. 2d at 1023. This court concludes that Plaintiff has not shown that Defendant was provided

with enough information, through the proper channels, to create some probability that it would think that Plaintiff was being sexually harassed. See Durkin, 341 F.3d at 613. In addition, based upon Plaintiff's testimony, the incidents she did report, other than the alleged verbal abuse, were handled by Defendant and did not occur again. Accordingly, this court concludes that Plaintiff has not shown a basis for employer liability in this case because she has not shown that Defendant was negligent in discovering or remedying the alleged harassment. See Durkin, 341 F.3d at 613. For this reason also, this court concludes that Defendant is entitled to summary judgment on Plaintiff's claim of sexual harassment.

## III. CONSTRUCTIVE DISCHARGE

It is not entirely clear, but it appears that Plaintiff may be claiming constructive discharge based upon her argument that she was "forced to take a leave of absence" after which her employment was terminated. This court concludes that, to the extent Plaintiff is claiming constructive discharge, Defendant is entitled to summary judgment on this claim as well.

"Creation of a hostile work environment is a necessary predicate to a hostile-environment constructive discharge case." Witte v. Wis. Dep't of Corrections, 434 F.3d 1031, 1035 (7th Cir. 2006), citing Pa. State Police v. Suders, 542 U.S. 129, 149 (2004). "Working conditions for constructive discharge must be even more egregious than those that would support a finding of a hostile work environment; absent extraordinary circumstances, an employee is expected to remain employed while seeking redress." Witte, 434 F.3d at 1035-36.

In this case, this court has already concluded that Plaintiff failed to show that she was subjected to an actionable hostile work environment. Therefore, Plaintiff clearly cannot prevail on a claim of constructive discharge.

17

## IV.  TERMINATION

Plaintiff has alleged that her termination was based upon sex discrimination and retaliation. Plaintiff has not submitted any direct or circumstantial evidence to support her claim that her termination was based on intentional discrimination or retaliation.  Instead, Plaintiff has claimed that a similarly situated male employee, Brad Hug, was treated more favorably.  This court agrees with Defendant that the evidence submitted does not support this argument.

In order to establish a prima facie case of sex discrimination, Plaintiff must show: (1) she is a member of a protected class; (2) at the time of her termination, she was meeting her employer's legitimate employment specifications; (3) despite her competent performance, she suffered an adverse employment action; and (4) she was treated less favorably than similarly situated male employees.  Peele v. Country Mut. Ins. Co., 288 F.3d 319, 326 (7th Cir. 2002); see also Whittaker, 424 F.3d at 647.  Similarly, in order to establish a prima facie case of retaliation, Plaintiff must show that (1) after lodging a complaint about discrimination, (2) only she, and not any otherwise similarly situated employee who did not complain, was (3) subjected to an adverse employment action even though (4) she was performing her job in a satisfactory manner.  See Whittaker, 424 F.3d at 647.

This court agrees with Defendant that Plaintiff has not met her burden to show that a similarly situated employee not in the protected class was treated more favorably.  The documentation provided by Defendant shows that Defendant changed its leave policy in June 2003 and shortened the period of leave it allowed from 12 months to 6 months.  Defendant then made the decision to "grandfather" those employees who had already been on leave for six months.  The employees who were "grandfathered" and were allowed 12 months of leave were Brad Hug and Joyce Good.  Employees, including Plaintiff, who had not been on leave for six months were

notified that their leave would expire at the end of the six-month period. Besides Plaintiff, these employees included James Poundstone and Martha McCoskey. Plaintiff has not attempted to dispute this evidence and instead argues that these facts are "immaterial" because, due to her post-traumatic stress disorder, she was unable to return to work at the time her leave was up. As noted, Plaintiff contends that Brad Hug was similarly situated and was treated more favorably. This court cannot agree.

"To show that another employee is 'similarly situated,' a plaintiff must show that there is someone who is comparable to her in all material respects." Durkin, 341 F.3d at 613. Courts must consider all relevant factors to determine whether two employees are similarly situated. Durkin, 341 F.3d at 613, citing Radue v. Kimberly-Clark Corp., 219 F.3d 612, 617-18 (7th Cir. 2000). This court concludes that the evidence shows that Plaintiff and Brad Hug were not similarly situated. Brad Hug had been out on leave for over six months when Defendant changed its policy and Plaintiff had not. Based upon the documentation provided by Defendant, it is clear that employees, both male and female, who had already been on leave for six months when the leave policy was changed were treated the same and employees who had not been on leave for six months when the policy was changed, both male and female, were also treated the same. Therefore, Plaintiff has not met her burden to show that a similarly situated male employee or a similarly situated employee who had not complained about discrimination was treated more favorably. Consequently, this court agrees with Defendant that it is entitled to summary judgment on Plaintiff's claims that she was terminated based on sex discrimination and based upon retaliation.

IT IS THEREFORE ORDERED THAT:

(1) Defendant's Motion for Summary Judgment (#31) is GRANTED. Judgment is entered

in favor of Defendant and against Plaintiff.

(2) This case is terminated. Accordingly, the final pretrial conference scheduled on May 25, 2006, and the jury trial scheduled on June 5, 2006, are hereby VACATED.

(3) Defendant's Agreed Motion to Continue Trial and Final Pretrial Conference (#38) is therefore MOOT.

ENTERED this 15th day of            May            , 2006.

s/MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE